IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

---

------------------------------------------------------------------------- x
NATIONAL CREDIT UNION ADMINISTRATION         :
BOARD, as Liquidating Agent of U.S. Central Federal   :
Credit Union, Western Corporate Federal Union, Members   :
United Corporate Federal Credit Union, and Southwest   :
Corporate Federal Credit Union,              :
                                             :
                                             :  CIVIL ACTION
                 Plaintiff,                  :  CASE NO. 11-cv-2341 EFM/JPO
                                             :
              v.                             :
                                             :
J.P. MORGAN SECURITIES LLC, J.P. MORGAN      :
ACCEPTANCE CORPORATION I, AMERICAN HOME      :
MORTGAGE ASSETS LLC, INDYMAC MBS, INC., and  :
BOND SECURITIZATION, LLC,                    :
                                             :
                                             :
                 Defendants.                 :
------------------------------------------------------------------------- x

### J.P. MORGAN DEFENDANTS' RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

The J.P. Morgan Defendants[1] respectfully submit this response to the Notice (Dkt. No. 42) filed by the Board informing the Court of Massachusetts Mutual Life Ins. Co. v. Residential Funding Co., LLC, C.A. Nos. 11-30035-MAP et al., 2012 U.S. Dist. Lexis 17864 (D. Mass. Feb. 14, 2012) ("MassMutual").  Contrary to the Board's assertion, MassMutual does not support denial of the J.P. Morgan Defendants' pending motion to dismiss.  In MassMutual, the court reviewed complaints in nine separate actions involving "dozens of defendants", (id. at *8), and naturally a multitude of originators.  The MassMutual court found that plaintiff there

---

[1] Defined terms have the same meaning as in the J.P. Morgan Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss the Complaint ("Reply Br.").

provided "varying degrees of support for [its] allegations in the different complaints" and, though the J.P. Morgan Defendants respectfully disagree, presented allegations that were "sufficient to survive a motion to dismiss". (Id. at *24.)

First, the Board is wrong that its "complaint here plausibly alleges the same types of facts [as those alleged by MassMutual] and links the alleged systematic disregard of underwriting standards to specific originators". (Notice at 2.) Unlike here, in MassMutual, the court concluded that plaintiff had conducted a "subsequent forensic analysis of the loan data," (id. at *19), finding that it had reviewed information such as assessor, DMV, credit and tax records, and loan servicing and mortgage application data. In addition, MassMutual included more detailed allegations specific to the particular lenders that originated the particular loans underlying the RMBS certificates at issue. It alleged, for example, that "a company insuring the securitizations found that over eighty percent of the loans were originated in violation of the represented standards". (Id.) And yet, ultimately, the MassMutual court found that only two of the nine complaints "easily pass[ed] the pleading hurdle" because those complaints relied on more "substantial sources", including confidential witness testimony. (Id. at *24.) Here, in contrast, the Board did not perform any "forensic analysis of loan data" (id. at *19), it does not rely upon any original confidential witness testimony and its originator-specific allegations are sorely lacking. The Board's post-purchase loan performance statistics essentially stand alone. Although the J.P. Morgan Defendants respectfully disagree with the MassMutual court that post-hoc analyses of loan data and originator-specific allegations of the type made in MassMutual are sufficient state a claim, it is beyond dispute that the Board does not make even those minimal allegations here. Instead, the Board has failed to identify a single defective loan and does not

even attempt to allege the required connection between its allegations and the specific transactions at issue.  (See Reply Br. at 7-8.)

Far more instructive is the decision by Judge Wu of the Central District of California in another case brought by the Board involving nearly identical allegations as those presented here, as discussed in the Reply Brief and as attached as Ex. 1 thereto.  NCUAB v. RBS Sec., Inc., Tentative Ruling, No. 11-cv-05887, ECF No. 108 (C.D. Cal. Dec. 19, 2011) ("RBS").  There, the court found that the loan performance statistics upon which the Board so heavily relies are "an example of the conclusory pleading tactic Twombly itself expressly rejected—locating an effect and presuming the [self-serving] cause, without the underlying factual allegations necessary to render that cause any more than a possible one, or one that is simply 'consistent with' liability".  RBS at 4-5.  The RBS court further explained that "there is nothing tying what little factual allegations there are supporting the systematic disregard of underwriting standards to the particular securities that are at issue here and the pools of mortgages underlying those securities".  Id. at 9.

Second, although the MassMutual court "rejected defendants' claim that poor loan performance was 'due solely to the economic downturn' because it presented 'a question of fact that cannot be resolved on a motion to dismiss'" (Notice at 2 (quoting MassMutual at *25)), in the instant case the Board itself has publicly attributed the poor performance of its RMBS investments to market factors.  (JPM Br. at 20.)  Thus, the Board's admission undermines its contention that it has plausibly alleged specific facts to demonstrate that the Originators systematically disregarded their underwriting guidelines, because the "facts" it relies on (i.e., loan performance statistics) are just as easily (and far more plausibly) explained by the economic downturn that the Board, outside the litigation context, admits was the cause of its losses.  Under

these circumstances, the Board's loan performance statistics simply cannot state a plausible claim for relief. The instant case is thus distinguishable from MassMutual, which relied uniquely upon Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762 (1st Cir. 2011), where the court allowed limited discovery to proceed where a plaintiff linked allegations of abandoned underwriting to specific originators, while recognizing that doing so involved a "judgment call". Nomura, 632 F.3d at 773. The Board's own attribution of poor loan performance to market factors reflects that it has not done enough to demonstrate that its systematic disregard allegations are plausible, as opposed to simply possible.

Third, the Board also points to the ruling in MassMutual that certain disclosures in offering documents "cannot defeat" claims based on "wholesale abandonment of underwriting standards" (id. at *23). However, while the Board makes the conclusory assertion of "wholesale abandonment", the alleged facts it points to in support of that conclusion refer merely to a loosening of underwriting standards (see Reply Br. at 6), which the Board itself has conceded is not equivalent to their abandonment (Opp'n at 37). Thus, as in RBS, the Board does not "have a response to the defendants' argument that the originators were disclosing that they were loosening or relaxing their lending standards . . . and that as a result the RMBS were backed by riskier loans resulting from those loosened or relaxed standards". RBS at 8 n.9.

Finally, with respect to its inquiry notice ruling,[2] the MassMutual court failed to take into account that the claims there (like the Board's claims here[3]) were not grounded in fraud and did

---

[2] It should be noted that while the Board argues that the Supreme Court's ruling in Merck & Co., Inc. v. Reynolds, 130 S.Ct. 1784 (2010) "will broadly influence state as well as federal securities law" such that inquiry notice will not apply where courts "tend to follow federal authority" (Opp'n Br. at 42), MassMutual applied the inquiry notice standard and nowhere referenced Merck even though "MassMutual's claims arose under state securities law based on § 12 of the federal Securities Act of 1933", (Notice at 2), and courts apply federal authority in interpreting that law. See Marram v. Kobrick Offshore Fund, Ltd., 51, 809 N.E.2d 1017, 1025 (2004) ("The resemblance to § 12[2] of the Securities Act of 1933 will once more make for an interchangeability of federal and

4

not require proof of scienter.  These lesser standards of pleading and proof are significant in assessing when a reasonable plaintiff should have been on notice of a potential claim.  (See Reply Br. at 13; Alaska Elec. Pension Fund v. Pharmacia Corp., 554 F.3d 342, 348 n.4 (3rd Cir. 2009) ("Section 11 does not require a plaintiff to plead or to prove scienter; § 10(b) does.  This is a distinction with a difference, both in terms of what a plaintiff must show for recovery and in terms of what information must be available for inquiry notice to take hold.").)  Moreover, in sharp contrast to MassMutual, where the court was presented with only "newspaper articles, industry publications, and government reports that were publicly available before early 2007", (id. at *41), here, the Board itself, as early as 2005, warned the Credit Unions of the potential for inflated appraisals and the risks of liberalized underwriting practices.  (JPM Br. at 6-8.)  This judicially noticeable fact, combined with other "storm warnings"—i.e., reports, loan performance data available in monthly trustee reports and ABSNET data—placed the Credit Unions on notice of their claims by February 2007 at the latest.[4]  See RBS at 18 (the Board "unquestionably faces difficulties in asserting that the performance statistics form a large basis for its allegations . . . while at the same time avoiding a statute of limitations problem").

---

state judicial precedence in this very important area.") (quoting Louis Loss, COMMENTARY ON THE UNIFORM SECURITIES ACT 147 (1976) (Draftmen's Commentary).)

[3] With the potential exception of the Board's claim under Kan. Stat. Ann § 17-12a509.  (See Reply Br. at 2 n.2.)

[4] In addition, there were several additional "storm warnings" not addressed in MassMutual between early 2007 and March 20, 2008—the last "critical date" alleged by the Board.  (Opp'n at 29-30; Reply Br. at 17-19.)

Dated:  February 27, 2012	Respectfully submitted,

By:  /s/  John W. Shaw
    John W. Shaw (KS # 70091)
    Thomas P. Schult (KS # 70463)
    Jennifer B. Wieland (KS # 22444)
    BERKOWITZ OLIVER WILLIAMS
    SHAW & EISENBRANDT LLP
    2600 Grand Boulevard, Suite 1200
    Kansas City, Missouri 64108
    Telephone:	(816) 561-7007
    Facsimile:	(816) 561-1888

Of Counsel:

    Daniel Slifkin (NY # 2439768)
    dslifkin@cravath.com
    Michael A. Paskin (NY # 2767507)
    mpaskin@cravath.com
    CRAVATH, SWAINE & MOORE LLP
    825 Eighth Avenue
    New York, New York 10019
    Telephone:	(212) 474-1000
    Facsimile:	(212) 474-3200

*Counsel for Defendants J.P. Morgan Securities LLC, J.P. Morgan Acceptance Corporation I and Bond Securitization, LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 27th day of February, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                                    /s/ John W. Shaw
                                       *Counsel for Defendants J.P. Morgan*
                                       *Securities LLC, J.P. Morgan Acceptance*
                                       *Corporation I and Bond Securitization, LLC*