# Exhibit A

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/29/12
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
NEW JERSEY CARPENTERS HEALTH FUND, on
Behalf of Itself and All Others
Similarly Situated,
                    Plaintiff,

                                              08 Civ. 5310 (DAB)
         -against-                            ORDER AND MEMORANDUM

NOVASTAR MORTGAGE, INC., NOVASTAR
MORTGAGE FUNDING CORPORATION,
SCOTT F. HARTMAN, GREGORY S. METZ,
W. LANCE ANDERSON, MARK HERPICH,
RBS SECURITIES, INC. f/k/a GREENWICH
CAPITAL MARKETS, INC., d/b/a RBS
GREENWICH CAPITAL, DEUTSCHE BANK
SECURITIES, INC., and WELLS FARGO
ADVISORS, LLC f/k/a WACHOVIA
SECURITIES LLC,
                    Defendants.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

    Plaintiff New Jersey Carpenters Health Fund ("Plaintiff") brings this putative class action alleging that Defendant NovaStar Mortgage, Inc. ("NMI") disregarded its own underwriting guidelines in originating residential mortgage loans and then, through its subsidiary NovaStar Mortgage Funding Corporation ("NMFC")[1], arranged for the sale of securities to investors that were collateralized by these mortgage loans.

    Pursuant to a June 16, 2006 Registration Statement (the

---

[1] Defendants Scott F. Hartman, Gregory S. Metz, W. Lance Anderson and Mark Herpich (the "Individual Defendants"), together with NMI and NMFC are collectively known as "the NovaStar Defendants."

1

"Registration Statement") filed with the SEC by NMFC, the securities consisted of the issuance, distribution, and sale of mortgage pass-through certificates issued on May 25, 2007 (the "Certificates") and representing interests in the NovaStar Mortgage Funding Trust Series 2007-2 (the "2007-2 Offering").[2] Defendants RBS Securities, Inc., Deutsche Bank Securities, Inc., and Wells Fargo Securities, LLC (collectively the "Underwriter Defendants") were the underwriters for the Certificates. Plaintiff alleges that the offering documents for the Certificates contained material misstatements and/or omissions in violation of Sections 11, 12 and 15 of the Securities Act of 1933 ("the 1933 Act"). Plaintiff also alleges that the Underwriter Defendants failed to perform the requisite level of due diligence in connection with the Offering.

In an Order dated March 31, 2011, this Court dismissed Plaintiff's First Consolidated Amended Securities Class Action Complaint ("CAC"), but granted Plaintiff leave to replead certain claims against certain Defendants. That Order required Plaintiff

---

[2] Plaintiff initially purported to bring its claims on behalf of itself and a class of persons who purchased Certificates sold in any of six different offerings that were conducted under the June 16, 2006 Registration Statement. However, Plaintiff only alleges that it purchased in one of those six offerings (the 2007-2 Trust Series), and in its Order of March 31, 2011 this Court held that Plaintiff lacks standing to sue for the remaining Trust Series offerings under the June 16, 2006 Registration Statement. See March 31, 2011 Order (Docket No. 116) at 14-15.

2

"make allegations specific to the NovaStar Defendants' origination practices that related to the only offering that is relevant here: the 2007-2 Offering" and "make allegations that are specific to the M-1 Certificates it bought." (March 31, 2011 Order, at 26.) Plaintiff filed a Second Amended Complaint on May 18, 2011, and a [Corrected] Second Amended Complaint ("SAC") on June 30, 2011. Now before the Court are Motions to Dismiss the SAC, filed separately by the NovaStar Defendants and the Underwriter Defendants on July 8, 2011.

For the reasons below, the Motions to Dismiss filed separately by the NovaStar Defendants and the Underwriter Defendants are GRANTED in their entirety, with prejudice.

## I. BACKGROUND

For purposes of this Motion, the Court assumes all of Plaintiff's factual allegations in the SAC are true. The Court assumes the Parties' familiarity with the factual background of this matter as fully set forth in the Court's Order of March 31, 2011, at pages 3-11.

This putative class action arises from the issuance of $1.32 billion of Certificates, which were collateralized by residential mortgage loans. (SAC ¶¶ 5, 16.) NMI originated the mortgages which backed the Certificates, allegedly pursuant to underwriting guidelines set forth in the Registration Statement and the

3

Prospectus Supplement ("the 2007-2 Prosupp") (together, the "Offering Documents"). (SAC ¶¶ 45-50.) Plaintiff purchased 100,000 units of NovaStar Home Equity Loan Asset-Backed Certificates, Series 2007-2, Class M-1 Certificates pursuant to the June 16, 2006 Registration Statement.[3] (SAC ¶ 20.) Plaintiff purchased its Certificates directly from Defendant RBS in the initial public offering. (SAC ¶ 135.)

At the time of issuance, 81% of the Certificates in the 2007-2 Offering were assigned the highest, AAA or Aaa, investment grade ratings from rating agencies Moody's and S&P. (SAC ¶¶ 39-40.) The Class M-1 Certificates, purchased by Plaintiff, had an initial rating of Aa1 or AA+, indicating to investors that the M-1 Certificates were considered to be of "very high grade/quality" by the rating agencies. (SAC ¶¶ 39, 41.) In July 2007, two months after the 2007-2 Offering, rating agencies revised the methodologies used to rate mortgage-backed securities because the performance of the underlying collateral "called into question" the accuracy of the loan data. (SAC ¶ 98.) When the rating agencies applied the new methodology to the 2007-2 Certificates,

---

[3] The 2007-2 Offering was composed of five senior and nine mezzanine tranches (with "M-1" being the highest mezzanine tranche). These tranche designations reflect the position of the tranche in the subordination structure and the amount of protection provided to each tranche against realized losses. Realized losses from defaulting borrowers would first reduce the principal of the M-9 Certificates and then proceed upward to investors who purchased M-8, M-7, etc. (SAC ¶ 5, n. 3; 2007-2 Prosupp at S10, S120-22.)

4

the ratings collapsed as many as 20 levels. The Class M-1 Certificates have now been downgraded to junk bond levels of C or CCC, reflecting the rating agencies' assessment that it is likely that the bonds will default prior to investors receiving their principal. (SAC ¶¶ 99-100.)

The 2007-2 Prospectus included underwriting guidelines applicable to all the Certificates in the 2007-2 Offering. (See 2007-2 Prosupp at S86-90; SAC ¶¶ 45-48, 50, 90-92.) The Offering Documents contained a litany of risk factors, yet they do not warn investors that the stated loan origination guidelines would be routinely disregarded, as Plaintiff alleges they were. (SAC ¶¶ 57-82.)

The SAC alleges violations of Sections 11, 12(a)(2) and 15 of the 1933 Act, 15 U.S.C. §§ 77k, 77l(a)(2) and 77o, based on a material omission that was not disclosed in the offering documents: the underwriting guidelines set forth in the offering documents were systematically disregarded. (SAC ¶¶ 8, 10, 70-82, 106-09.) These material omissions constituted material misstatements in the specific portions of the offering documents that described the guidelines used to originate mortgages, because, in fact, those guidelines were frequently disregarded. (SAC ¶¶ 106-09.)

5

II. DISCUSSION

A. Legal Standard

For a complaint to survive dismissal under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility," the Supreme Court has explained,

> when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009) (quoting Twombly, 550 U.S. at 556-57). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks omitted). "In keeping with these principles," the Supreme Court has stated,

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

6

Iqbal, 2009 WL 1361536, at *13.

In ruling on a 12(b)(6) motion, a court may consider the complaint as well as "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." Zdenek Marek v. Old Navy (Apparel) Inc., 348 F. Supp. 2d 275, 279 (S.D.N.Y. 2004) (citing Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (internal quotations omitted)).

Since Plaintiff's allegations and claims sound in strict liability, not fraud,[4] the SAC is subject to the standards of Rule 8(a), not to the heightened pleading requirements of Rule 9(b). Rule 8(a) provides that a pleading must "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). Rule 8 does not require "detailed factual allegations," but it demands more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S.Ct. at 1949. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. While legal conclusions can form the

---

[4] "This Complaint asserts no allegations or claims sounding in fraud and Plaintiff specifically disclaims any such allegations." (SAC ¶ 3.)

7

framework of a complaint, they must be supported by factual allegations. Id.

B. Claims pursuant to Sections 11 and 12(a) of the 1933 Act

Plaintiff alleges violations of Section 11 of the 1933 Act against NMFC, the Individual Defendants,[5] and the Underwriter Defendants. Plaintiff alleges violations of Section 12(a)(2) against Underwriter Defendant RBS. In particular, Plaintiff alleges that the Offering Documents contained material misstatements and omissions concerning the mortgage loan collateral because when originating the mortgages NovaStar systematically disregarded its own underwriting guidelines.

To state a claim under Section 11, a plaintiff must allege that: (1) it purchased a registered security; (2) the defendant participated in the offering in a manner giving rise to liability under Section 11; and (3) the registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). A

---

[5] The Individual Defendants, and their titles during the relevant time period, are: Scott F. Hartman (NFMC's President and Director of NFMC); Gregory S. Metz (NFMC's Secretary and Principal Financial Officer); W. Lance Anderson (Director of NFMC and NovaStar's President and Chief Operating Officer); and Mark Herpich (Director of NFMC). All of the Individual Defendants signed the June 16, 2006 Registration Statement pursuant to which the 2007-2 Offering was made. (SAC ¶¶ 24-27.)

8

claim under this section may be asserted against every person who signed the registration statement, the directors of the issuer and the underwriter of the securities. Id.

Liability under Section 12(a)(2) arises when a person offers or sells a security by means of a prospectus or oral communication that includes a material misrepresentation or omission. 15 U.S.C. § 77l(a)(2). Claims under Sections 11 and 12(a)(2) of the Securities Act have "roughly parallel elements." In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 359 (2d Cir. 2010). Section 11 imposes liability on issuers and other signatories of a registration statement, while Section 12(a)(2) imposes liability under similar circumstances with respect to, inter alia, prospectuses. See Iowa Pub. Emps'. Ret. Sys. v. MF Global, Ltd., 620 F.3d 137, 141 (2d Cir. 2010).

Plaintiff alleges that Defendants systematically failed to comply with and disregarded the stated underwriting guidelines as follows: "NovaStar improperly granted exceptions by approving loans that did not have appropriate compensating factors; NovaStar failed to obtain proper documentation from borrowers required under its underwriting guidelines; NovaStar failed to determine reasonableness of borrowers' representations in Stated Income/Stated Asset and low documentation loans; Defendants failed to disclose that NovaStar's quality control systems did not adequately monitor compliance with underwriting standards;

9

and Defendants failed to conduct proper due diligence regarding the quality of the loans in the collateral pool." (SAC ¶ 109.) Plaintiff alleges that because Defendants failed to disclose that NovaStar routinely disregarded its underwriting practices, the statements in the Offering Documents related to NovaStar's underwriting standards were materially untrue and omitted material facts necessary to make them not misleading.

Defendants argue that Plaintiff's SAC fails to allege any actionable statement or omission because it does not contain allegations specific to the class M-1 Certificates Plaintiff bought, and because Plaintiff's allegations that Defendants ignored underwriting guidelines are conclusory and cannot be squared with the actual disclosures Plaintiff received. Defendants further argue that Plaintiff fails to allege sufficiently that any misstatement or omission was material in light of the "total mix" of information available at the time of the 2007-2 Offering.

The SAC is bolstered by allegations of former NMI employees who were engaged in origination of NMI residential mortgages at the time the 2007-2 loans were underwritten. (SAC ¶¶ 57-82.) Plaintiff claims that its allegations of disregarded underwriting guidelines are supported by particular facts compiled from these NovaStar employees. The employees make the following allegations: NovaStar employees were given performance incentives based on

10

loan volume targets (SAC ¶¶ 70-74); loans were sometimes approved when documentation was incomplete or facially deficient (SAC ¶¶ 75-79); loans were sometimes approved under NovaStar's "Stated Income" program without determining the reasonableness of the borrower's representations (SAC ¶¶ 80-82.) However, no interviewed employee ties a particular loan to a deviation from the underwriting guidelines for the collateral backing the 2007-2 Offering.

The SAC does not cite one specific loan that should not have been included in the 2007-2 Offering. In fact, Plaintiff does not cite any example of a loan that failed to meet the underwriting guidelines and ended up in the 2007-2 loan pool, let alone the specific loans which secured Plaintiff's investment in the M-1 Certificates. The general allegations and anecdotes of former NMI employees alone do not indicate there were material misstatements or omissions in the offering documents concerning the origination of the loans backing the 2007-2 Offering. See In re IAC Sec. Litig., 695 F. Sup.. 2d 109, 119 (S.D.N.Y. 2010) (confidential witness statements "stated in the most general of terms and without any [corroborating] facts" failed to support 1933 Act claims because they did "not provide enough detail to nudge plaintiffs' claims across the line from conceivable to plausible.")

While Plaintiff alleges that NovaStar "improperly granted

11

exceptions," (SAC ¶ 109), the 2007-2 Prosupp explained that the underwriting guidelines conferred discretion on the underwriters to deviate from the guidelines where in the underwriter's judgment there were compensating factors. (2007-2 Prosupp at S87.) Plaintiff has not alleged facts to show one instance of NMI granting an exception where it didn't believe compensating factors existed that warranted the exception. Plaintiff does not allege sufficiently that NMI did not believe an exception was warranted as to any loan it approved.[6]

The Court finds that Plaintiff's allegations are not sufficiently specific to state a claim upon which relief can be granted. Plaintiff's claims were previously dismissed, without prejudice, because Plaintiff "fail[ed] to make allegations specific to the NovaStar Defendants' origination practices that relate to the only offer that is relevant here: the 2007-2 Offering." (March 31, 2011 Order, at 26.) The need for such specificity is well-recognized. See, e.g., Footbridge Ltd. v. Countrywide Home Loans, Inc., 2010 WL 3790810 at *12-13 (S.D.N.Y. Sept. 28, 2010) (dismissing claim that lender abandoned its underwriting guidelines and made exceptions without compensating

---

[6] Allegations that reflect subjective opinions, as opposed to statements of fact, are not actionable unless the SAC alleges that the speaker did not truly have the opinion at the time it was made public. Tsereteli v. Residential Asset Securitization Trust 2006-A8, 692 F. Supp. 2d 387, 393 (S.D.N.Y. 2010) (citing Shields v. Citytrust Bancorp., 25 F.3d 1124, 1131 (2d Cir. 1994)).

12

factors where plaintiffs failed to tie general allegations of "abundant" exceptions to the specific securitizations in which they invested); City of Ann Arbor Empl. Ret. Sys. v. Citigroup Mortgage Loan Trust, Inc., 703 F. Supp. 2d 253, 263 (E.D.N.Y. 2010) (1933 Act claims dismissed where plaintiff failed to show how omissions regarding underwriting guidelines were tied to specific loans). The SAC does not cure this fatal defect. Plaintiff does not provide details that would tie its claim of loosened underwriting guidelines to the specific loans that secured the Class M-1 Certificates that Plaintiff bought. Instead, Plaintiff relies on general allegations of alleged underwriting lapses without tying any of them to the loans that secured Plaintiff's investment in the M-1 Certificates.

The Court further finds that the SAC fails to allege sufficiently the alleged misstatements and omissions would have been material in light of the extensive risk disclosures and information Plaintiff received, as well as events generally known about the NovaStar Defendants and the subprime market in the months preceding the 2007-2 Offering. A court finds a violation of Section 11 when "material facts have been omitted or presented in such a way as to obscure or distort their significance." In re Flag Telecom Holdings, Ltd. Sec. Litig., 618 F. Supp. 2d 311, 320-21 (S.D.N.Y. May 1, 2009); see also Caiola v. Citibank, N.A., 295 F.3d 312, 329 (2d Cir. 2002)(materiality is found where there

is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available") (citing Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988)). "The test for determining whether the prospectus contained a material misstatement or omission is whether the defendants' representations in the prospectus, taken together and in context, would have misled a reasonable investor." In re Flag Telecom Holdings, Ltd. Sec. Litig., 618 F. Supp. 2d at 320-21.

Here, Plaintiff received extensive risk disclosures that explicitly warned Plaintiff, among other things, that "[s]ubstantially all of the loans in the mortgage pool were underwritten to non-conforming standards and may experience higher delinquency and loss rates;" "[t]he Mezzanine Certificates are particularly sensitive to the timing and amount of losses and prepayment on the mortgage loans;"[7] the "mortgage pool contains high original loan-to-value loans which could cause losses to holders of the Class A and Mezzanine Certificates;" "[i]f the residential real estate market should experience an overall decline in property values . . . the actual rates of delinquencies, foreclosures and losses could be higher than those now generally experienced in the mortgage lending industry;"

---

[7]   Plaintiff purchased Class M-1 Mezzanine Certificates. (SAC ¶ 20.)

14

"[r]ecent developments in the residential mortgage market may adversely affect the market value of the Certificates." (2007-2 Prosupp at S13, S20, S22.) These extensive disclosures in the Prospectus and the 2007-2 Prosupp render Plaintiff's conclusory allegations "immaterial as a matter of law because it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same offering." Halperin v. eBanker USA.com, 295 F.3d 352, 357 (2d Cir. 2002).

This is particularly true in light of the "total mix" of information available to Plaintiff at the time it purchased the M-1 Certificates as part of the 2007-2 Offering. Basic, 485 U.S. at 231-32. The SAC acknowledges that Plaintiff was aware of the "publicly known financial issues at NovaStar" and the "publicly disclosed information regarding developments in the subprime market during 2006 and 2007." (SAC ¶ 56.) The Offering Documents disclosed the high-risk nature of the loans backing the certificates, and in the months leading up to Plaintiff's purchase information regarding the downtown of the subprime mortgage market was well-known and widely available. This Court previously required that Plaintiff do more that allege "the subprime market melted down and Defendants were market participants, so they must be liable for my losses in my risky investment." (March 31, 2011 Order, at 26.) Plaintiff has simply

15

failed to do so.

Accordingly, Plaintiff's claims under Section 11 and 12(a) are hereby DISMISSED, with prejudice.

C. Claims pursuant to Section 15 of the 1933 Act

Plaintiff alleges violations of Section 15 of the 1933 Act against NMI and Defendants Hartman and Metz as controlling persons of NMFC. In particular, Plaintiff alleges that Hartman and Metz as senior officers of NMFC (the Issuer) were responsible for preparing and filing the Offering Documents and as senior officers of NMI (the Sponsor) were responsible for selecting the mortgages to be included in the 2007-2 pool, structuring the Offering and pricing the sale of the Certificates on the Offering. (SAC ¶¶ 24-28, 140-41.) Issuer NMFC is a wholly-owned subsidiary of NMI, (SAC ¶ 22), and Plaintiff alleges that NMI had direct responsibilities in selecting the mortgages in the pool, structuring the Offering and pricing the Certificates, and had the power to exercise control over the Issuer. Accordingly, Plaintiff alleges that Defendants Hartman, Metz and NMI all had and exercised the power to influence NMFC to engage in violations of the 1933 Act, contrary to Section 15 of the Act.

To plead a claim under Section 15, "a plaintiff must allege (1) a primary violation by a controlled person and (2) direct or indirect control by the defendant of the primary violator." E.g.,

16

Adelphia Comm., 2007 U.S. Dist. LEXIS 66911, at *30; In re Global Crossing, Ltd. Sec. Litig., 322 F. Supp. 2d 319, 349 (S.D.N.Y. 2004). "Culpable participation" by the controlling person is not an element of a Section 15 claim. E.g., Adelphia Commc'ns, 2007 U.S. Dist. LEXIS 66911, at *31; Global Crossing, 322 F. Supp. 2d at 349. In In re Refco, Inc. Sec. Litig., 503 F. Supp. 2d 611 (S.D.N.Y. 2007), the court stated, "a signature on an SEC filing containing the misrepresentations that are the subject of a claim is suggestive of control . . . allegations that [the individual] was directly involved in its day-to-day operations, including financial reporting and accounting . . . suffices as an allegation of control." Id. at 638.

Here, the Court has dismissed the Section 11 claims against the NovaStar and Individual Defendants. Because the Court has found that Plaintiff's Section 11 claims cannot be sustained, there is no primary violation and no claims under Section 15 can proceed. In re Morgan Stanley, 592 F.3d at 358.

Accordingly, the claims against Defendants NMI, Hartman and Metz pursuant to Section 15 of the 1933 Act are hereby DISMISSED, with prejudice.

D. Leave to Replead

When a complaint has been dismissed, permission to amend it "shall be freely given when justice so requires." Fed. R. Civ. P.

17

15(a). However, a court may dismiss without leave to amend when amendment would be "futile," or would not survive a motion to dismiss. <u>Oneida Indian Nation of New York v. City of Sherrill</u>, 337 F.3d 139, 168 (2d Cir. 2003) (internal citations omitted), rev'd on other grounds sub nom. <u>City of Sherrill v. Oneida Indian Nation of New York</u>, 544 U.S. 197 (2005). Plaintiff here has already once been granted leave to replead its Complaint. On the record before the Court, it appears beyond doubt that Plaintiff can prove no set of facts in support of its claims which would entitle it to relief. Because an additional amended complaint would not be able to survive a motion to dismiss, Plaintiff's SAC is hereby dismissed without leave to replead.

### III. CONCLUSION

For the reasons above, the Motions of the NovaStar Defendants and the Underwriter Defendants to dismiss the SAC are GRANTED, with prejudice and without leave to replead. The Clerk is directed to close the docket in this case.

SO ORDERED.

DATED: March 29, 2012

New York, New York

*Deborah A. Batts*

Deborah A. Batts
United States District Judge

18