EXHIBIT 5

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 11-6521-GW(JEMx) | Date | March 15, 2012 |
| Title | *National Credit Union Admin. Board v. Goldman Sachs and Co., et al.* | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | Pat Cuneo | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Terry W. Bird | J. Matthew Goodin |
| George Zelcs | Thomas Cunningham |
| Marc M. Seltzer | Richard H. Klapper |
| | Rita Hauesler |
| | Laura K. Oswell |

**PROCEEDINGS:** DEFENDANT RESIDENTIAL ACCREDIT LOANS, INC.'S MOTION TO DISMISS (filed 01/09/12);

DEFENDANTS GOLDMAN, SACHS & CO., AND GS MORTGAGE SECURITIES CORP.'S MOTION TO DISMISS THE COMPLAINT (filed 01/09/12);

SCHEDULING CONFERENCE

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. Counsel for plaintiff is ordered to file their supplemental brief and a chart showing the certificates and how they will be affected by March 21, 2012. The Court sets a non-appearance status conference for March 29, 2012. Court to issue ruling.

The scheduling conference is **taken off-calendar.**

                                                                    :   30

                                            Initials of Preparer   JG

***Nat'l Credit Union Admin. Bd., as Liquidating Agent of U.S. Cent. Fed. Credit Union & of W. Corp Fed. Credit Union v. Goldman, Sachs & Co., et al.***, Case No. CV-11-6521

Tentative Rulings on (1) Defendants Goldman, Sachs & Co. and GS Mortgage Securities Corp.'s Motion to Dismiss the Complaint, and (2) Defendant Residential Accredit Loans, Inc.'s Motion to Dismiss

**I. Background**

In this suit – one that is largely similar to another action before this Court, *NCUA v. RBS Securities Inc.*, No. 2:11-cv-05887-GW-JEM ("the *RBS* Matter") – the National Credit Union Administration Board, acting as "liquidating agent" of U.S. Central Federal Credit Union and of Western Corporate Federal Credit Union ("Plaintiff"),[1] sues Goldman, Sachs & Co. ("GSC"), GS Mortgage Securities Corp. ("GSMS" and, together with GSC, "Goldman") and Residential Accredit Loans, Inc. ("Residential")[2] for securities violations in connection with the underwriting and issuance of residential mortgage-backed securities ("RMBS"). Plaintiff became conservator for WesCorp and U.S. Central as of March 20, 2009, and became their liquidating agent as of October 1, 2010. *See* Complaint ¶ 14.

Plaintiff's Complaint, filed August 9, 2011, contains eight claims for relief: five for violation of Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, one for violation of Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(a)(2), one for violation of Cal. Corp. Code §§ 25401 and 25501, and one for violation of the Kansas Uniform Securities Act, Kan. Stat. Ann. § 17-12a509. GSC is allegedly liable as underwriter of all of the RMBS at issue in this case. *See id.* ¶¶ 1, 8, 18, 36. GSMS and Residential are alleged to be liable as the depositors and issuers of several of the securities in question. *See id.* ¶¶ 20, 22. Residential is a defendant only on Plaintiff's fifth claim for relief, a Section 11 claim.

---

[1] Western Corporate Federal Credit Union ("WesCorp") was involved in the *RBS* Matter. U.S. Central Federal Credit Union ("U.S. Central") was not.

[2] Plaintiff voluntarily dismissed two other original Defendants, Long Beach Securities Corp. and Fremont Mortgage Securities Corp. *See* Docket Nos. 61-62.

1

Goldman and Residential have now filed separate motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] Many of the issues raised by these motions have already been copiously briefed, argued and addressed in the context of the *RBS Matter*. As such, reference is frequently made herein to the Court's analysis in that action thus far, and the parties' familiarity with the two tentative rulings issued December 19, 2011, and January 30, 2012 (CV 11-5887, Docket Nos. 108 and 126), in connection with motions to dismiss that matter is presumed (as is obviously appropriate, given the parties' repeated reference to the Court's analysis in that case in their motion papers here).

## II. Analysis

### A. Applicable Procedural Standard

Under Rule 12(b)(6), a court must (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pled factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In its consideration of the motion, the court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *see also see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (indicating that a court may consider a document "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion"); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of

---

[3] Residential also joins in all arguments Goldman raises in its motion.

a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief). "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)), *cert. denied*, 131 S.Ct. 3055 (2011). "'[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Von Saher*, 592 F.3d at 969 (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

**B.** **The Court Cannot Resolve the Running of the Limitations Period Now and Will Not Require Amendment on This Issue**

The claims in this case are governed by either one year (federal) or two year (state) statutes of limitation. *See* 15 U.S.C. § 77m; Cal. Corp. Code §§ 25501, 25506(b); Kan. Stat. Ann. § 17-12a509(b), (j)(2). In addition, 12 U.S.C. § 1787(b)(14), which is hereinafter referred to as the "Extender Statute," lengthens at least certain statutes of limitation for actions brought by Plaintiff as conservator or liquidating agent. For the same reasons set forth in connection with the *RBS* Matter, *assuming the Extender Statute is applicable to the claims raised in this case*, the Court concludes that it is not possible at this stage to resolve whether Plaintiff's claims are barred by the applicable statutes of limitation. This is normally a fact-intensive question best resolved by a trier of fact, and that appears to be an applicable rule of thumb here. Both sides present reasons a factfinder may find persuasive as to whether or not WesCorp, U.S. Central and/or Plaintiff should have acted earlier than they did.

Similarly, for the same reasons as set forth in the *RBS* Matter, the Court concludes that Plaintiff's pleading of its/WesCorp's/U.S. Central's discovery is satisfactory, even assuming that the Ninth Circuit's decision in *Toombs v. Leone*, 777 F.2d 465 (9th Cir.

1985), survives the Supreme Court's decision in *Merck & Co., Inc. v. Reynolds*, 130 S.Ct. 1784 (2010). *See In re Bare Escentuals, Inc. Secs. Litig.*, 745 F.Supp.2d 1052, 1082 & n.6 (N.D. Cal. 2010) (applying *Merck* to Section 11 claim). Plaintiff's allegations *directly* addressing this issue are undoubtedly sparse and conclusory, *see* Complaint ¶¶ 304-05, but given: a) its other allegations concerning when alleged problems with systematic disregard of underwriting guidelines came to light, and b) the Court's inability (as noted above) to conclusively credit the Defendants' view(s) on this issue, re-pleading in this regard would be something of an empty exercise.

That leaves only the question of whether Plaintiff may rely upon the Extender Statute at all in demonstrating compliance with the applicable statutes of limitation. The parties obviously take contrasting positions on this question, with the Defendants arguing that the Extender Statute does not apply to Federal law-based claims or to securities claims in general. There appears to be no case law addressing these arguments.

As an initial aside, if *American Pipe* tolling applies (discussed further below), it is unclear to what extent there would be any additional need to rely upon the Extender Statute as well. Certainly there would be a need to rely upon with respect to at least four of the securities at issue here, because Plaintiff itself asserts that it only attempts to rely upon *American Pipe* tolling with respect to 9 of the 13 securities. Presumably, as to those 9, there would only be a need if the class action giving rise to the *American Pipe* issue was filed after Plaintiff became conservator of WesCorp and U.S. Central on March 20, 2009, and only if it was clear (which, as set forth above, it essentially is not) that the statute of limitations would have otherwise run prior to that earlier class action being filed.[4] In any event, if there is a need to rely upon the Extender Statute to survive statute of limitations issues, resolution of the parties' arguments on the correct construction of the Extender Statute in these regards is not as simple as the question of whether that statute applies to statutes of repose (addressed further below).

The *weaker* of the two arguments would appear to be that the Extender Statute

---

[4] Absent application of the Extender Statute, *American Pipe* tolling, or – with respect to a single security – tolling-by-agreement, Plaintiff does not appear to take the position that the one or two year statutes of limitation would <u>not</u> have run prior to this action being filed on August 9, 2011.

4

does not apply to Federal law-based claims at all. Defendants emphasize the references to "State law" in those subparagraphs of the Extender Statute (which is quoted, in full, in connection with the statute of repose discussion, *infra*) discussing what statutes of limitation would apply, and note further that Congress is clearly capable of referencing "Federal law" when it desires to do so, as demonstrated by its numerous references thereto in other sections of the Federal Credit Union Act. However, as the Extender Statute is written, "State law" is not its focus; it is merely an alternative measure of applicable statutes of limitation thereunder. This does not necessarily mean that the Extender Statute – a *federal* statute applying to a *federal* agency, see Complaint ¶ 11 – *only* applies to *state* law claims.

The second issue is perhaps more difficult for Plaintiff to survive. The Extender Statute only alters the statutes of limitation for "contract" and "tort" actions. How it defines those terms is left unexpressed. The vacuum caused by that silence is filled by Defendants' argument that securities claims are creatures of statute and therefore neither "contract" nor "tort" claims and by Plaintiff's argument that a number of courts have referred to securities claims as, essentially, statutory *tort* claims.

The way Congress has written this statute gives the Court no clear guidance on its proper application in this setting. If the Court were to adopt the strict "plain language" approach it found appropriate in the *RBS* Matter (and addressed further, *infra*) in connection with the question revolving around application of the statute to statutes of repose, it would likely lead the Court to a conclusion that securities claims were *not* encompassed by the Extender Statute. However, given the relative vagueness of the pertinent terms used as it relates to this question, it is perhaps less clear that this is the appropriate approach on *this* issue. If, however, Plaintiff is correct about the meaning of the Extender Statute – that (even putting aside the issue of its application to statutes of repose) it applies to federal claims and to securities claims – then Congress has passed an exceedingly poorly-worded statute. This is an issue that the Court will have to resolve because, if it is resolved in Defendants' favor, at a minimum it would seem to render untimely any of the claims herein based upon securities that do not have a chance of some other form of tolling (*American Pipe* or, perhaps, tolling-by-agreement).

5

### C. The Effect of the Applicable Statutes of Repose

In addition to applicable statutes of limitation, the claims in this case under federal securities law are governed by a three-year statute of repose (whereas the state law securities claims are governed by five-year statutes of repose). *See* 15 U.S.C. § 77m; Cal. Corp. Code §§ 25501, 25506(b); Kan. Stat. Ann. § 17-12a509(b), (j)(2). Based on the dates (trade dates and dates offered for sale) applicable to the securities in question, that statute of repose would have cut off any action pursuant to those laws that was not instituted by June 2010, *see* Complaint, Table 1, unless there would be some reason to extend or toll it. Plaintiff's claim under Kansas's Blue Sky law, which is based on a single security, would also have been untimely, unless there was a reason to extend or toll the repose period. *See* Complaint ¶¶ 309, 376, 382-83 & Table 1. Here, Plaintiff argues that both the "Extender Statute" and the tolling doctrine stemming from the Supreme Court's decision in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), operate to render timely (in terms of periods of repose) its federal claims based on all (due to the Extender Statute) or some (due to *American Pipe* tolling) of the securities at issue. As to the claim under Kansas law, Plaintiff *also* argues that a tolling agreement it entered into with Goldman in August 2010 operates to extend the applicable statute of repose. The remaining state law claim(s) is/are not at issue with respect to this question, as all agree that the applicable 5-year periods would not have expired.

  1. The Extender Statute Does Not Render Any Claims Timely With Respect to Periods of Repose

As the Court already (tentatively[5]) concluded in the *RBS* Matter, the Extender Statute does not operate to extend any statute of repose. The key portion of this Court's earlier analysis in the *RBS* Matter supporting this conclusion is as follows (with footnotes removed):

> [T]he plain language of the statute is all that the Court needs to resolve the question. Section 1787(b)(14) of Title 12 of the United States Code reads, in its entirety, as follows:
>
> (14) <u>Statute of limitations</u> for actions brought by conservator or

---

[5] The motions to dismiss in the RBS case are still under submission. *See NCUA v. RBS Securities Inc.*, No. 2:11-cv-05887-GW-JEM, Docket No. 126.

6

liquidating agent

(A) In general

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Board as conservator or liquidating agent shall be--

(i) in the case of any contract claim, the longer of--

(I) the 6-year period beginning on the date the claim accrues; or

(II) the period applicable under State law; and

(ii) in the case of any tort claim, the longer of--

(I) the 3-year period beginning on the date the claim accrues; or

(II) the period applicable under State law.

(B) Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of--

(i) the date of the appointment of the Board as conservator or liquidating agent; or

(ii) the date on which the cause of action accrues.

12 U.S.C. § 1787(b)(14) (emphasis added). The statute plainly refers to statutes of limitation. It makes no mention whatsoever of statutes of repose. *Cf. Resolution Trust Corp. v. Olson*, 768 F.Supp. 283, 285 (D. Ariz. 1991) (considering effect of similar extender statute, 12 U.S.C. § 1821(d)(14) and reaching same conclusion, in part because "substantive time limits," such as statutes of repose, "are binding on the federal government").

The plain language of a statute is the first resort in any effort at statutory interpretation. *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). "It is well established that, when the statutory language is plain, we must enforce it according to its terms." *Id.*; *cf. Davis [v. Birr, Wilson & Co., Inc.]*, 839 F.2d [1369,] 1374 [(9th Cir. 1988)] (Aldisert, J., concurring) (noting that statute of repose in the Securities Exchange Act of 1934 was "understood…to be absolute" "because of fear that lingering liabilities would disrupt normal business and facilitate false claims"); *Caviness v. DeRand Res. Corp.*, 983 F.2d 1295, 1301 (4th Cir. 1993) (stating that permitting equitable tolling of section 13 of the Securities Act "would require us to ignore the plain meaning of the language that says 'in no event' may an action be filed more than three years after the sale and defeat the very purpose of the statute of repose"). It may be true that

7

>   Plaintiff had little time to analyze its/WesCorp's case and institute an action given this effect from the statute of repose, but if Congress wanted to alleviate that effect, it could have very easily done so clearly. *See P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102-03 (2d Cir. 2004) ("[A] statute of repose begins to run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action."); *id.* at 102 ("In theory, at least, the legislative bar to subsequent action is absolute, subject to legislatively created exceptions…set forth in the statute of repose."). As it dealt with provisions of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), and not section 1787(b)(14) (or any other substantially similar statute), *McDonald v. Sun Oil Co.*, 538 F.3d 774 (9th Cir. 2008), is not controlling on this question. Congress's plain language is.
>
>   As a result, this action is effectively barred with respect to all claims where an applicable statute of repose expired prior to Plaintiff filing suit. Thus, Plaintiff's assertion that none of the sales or public offerings occurred more than three years prior to Plaintiff stepping in as WesCorp's conservator is misdirected; the correct question is whether the three-year periods expired before Plaintiff filed this lawsuit.

CV 11-5887, Docket No. 108, at 14-16.

The Court stands by that analysis here. It need not rely on Residential's argument, raised for the first time in its Reply Brief, that when Congress wishes to suspend statutes of repose it knows how to do so clearly. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Thus, unless saved from expiration as the result of some other reason, any claim here that is based upon RMBS that were *bona fide* offered to the public more than three (federal) or five (Kansas) years before this lawsuit was filed would be barred. In other words, *all* of Plaintiff's federal claims and the *only* claim against Residential (a Section 11 claim) would be eliminated absent some other exception.

> 2. Does *American Pipe* Tolling Apply At All And, If So, Does it Apply to Periods of Repose?

In its Complaint, Plaintiff alleges that *American Pipe* tolling preserves the timeliness of its claims with respect to a number of the securities at issue here.[6] The

---

[6] In truth, the parties' arguments and citations lead to some confusion with respect to exactly how many – and which – Residential offerings are covered by Plaintiff's *American Pipe* allegations. The Complaint

8

Defendants argue that *American Pipe* tolling is unavailable where the class representative in the class action in question actually does not have standing to sue in connection with the particular investment at issue. Residential also argues that *American Pipe* tolling cannot resurrect expired claims by virtue of a class representative plaintiff with standing to sue in connection with the security at issue joining the litigation *after* the applicable period has expired. Goldman (and Residential, by virtue of joinder) argues that *American Pipe* tolling does not apply to statutes of repose. Finally, Goldman (and Residential, by virtue of joinder) argues that even if *American Pipe* tolling did apply to statutes of repose, Plaintiff would not have pled it sufficiently here.

        a.  Does *American Pipe* Tolling Apply Where the Class Representative Did Not Have Standing?

Courts have disagreed on the question of whether *American Pipe* tolling applies where the representative plaintiff in the earlier class action is determined to not have had standing to sue in connection with the securities that are at issue in later litigation. In *Griffin v. Singletary*, 17 F.3d 356 (11th Cir. 1994), the Eleventh Circuit concluded that such standing was *not* a requirement for *American Pipe* tolling. *See id.* at 360. The Third Circuit did likewise in *Haas v. Pittsburgh National Bank*, 526 F.2d 1083 (3d Cir. 1975). *See also McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*, 295 F.3d 380, 385 (3d Cir. 2002); *cf. Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 562 (7th Cir. 2011) ("The [Supreme] Court's goal of enabling members of a putative class to rely on a pending action to protect their interests can be achieved only if the way in which the first suit ends – denial of class certification by the judge, abandonment by the plaintiff, or any other fashion – is irrelevant."). Judge Pfaelzer of this District took the opposite view in several cases pending before her in connection with Countrywide RMBS. *See, e.g., Allstate Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-CV-05236-MRP (MANx), 2011 U.S. Dist. LEXIS 123844, *7, 35-37 (C.D. Cal. Oct. 21, 2011) (listing cases where court reached same conclusion). Judge Koh reached the same conclusion in the Northern

---

seems to indicate that all six of the offerings would be covered by *American Pipe*. *See* Complaint ¶ 306 & Table 7. By the time of its Reply, however, Residential asserts that only two of the six are at issue with respect to Plaintiff's *American Pipe* argument. *See* Residential Reply Brief at 8:26-9:3 (citing Plaintiff's Opposition at 3). However, the page of Plaintiff's Opposition Brief that Residential cites – page 3 – does not appear to support Residential's claim in this regard. Nevertheless, the number at issue makes little difference in the Court's analysis.

9

District of California, as have other district courts within the Ninth Circuit. *See In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 09-CV-01376-LHK, 2010 U.S. Dist. LEXIS 124498, *16-27 (N.D. Oct. 19, 2010); *see also Boilermakers Nat'l Annuity Trust Fund v. WaMu Mortg. Pass Through Certificates, Series AR1*, 748 F.Supp.2d 1246, 1258-59 (W.D. Wash. 2010); *Palmer v. Stassinos*, 236 F.R.D. 460, 464-66 (N.D. Cal. 2006). Both sides of this debate have seemingly persuasive reasons for why standing should or should not be required. *See Maine State Retirement Sys. v. Countrywide Fin. Corp.*, 722 F.Supp.2d 1157, 1166 (C.D. Cal. 2010) (*rejecting* argument that "such a rule would place an onerous and impossible burden on a putative class member to determine whether the named plaintiffs upon which they are relying to protect their rights have standing to do so"); *id.* at 1167 ("This Court shares the concern of other district courts that extending *American Pipe* tolling to class action claims the original named plaintiffs had no standing to bring will encourage filings made merely to extend the period in which to find a class representative.").

With the courts in equipoise on this issue, the correct resolution is, at this time, uncertain. Given that it appears that the only Federal appellate courts to have considered the issue have concluded – or at least suggest – that standing would not be necessary, the Court might be reluctant to follow the trail the district courts within this Circuit have blazed.[7] If the Court takes that approach, *American Pipe* tolling would at least be available to toll the running of any statutes of limitation, if necessary beyond the effect of the Extender Statute.

                        b.   Does *American Pipe* Tolling Apply to Statutes of Repose?

If *American Pipe* tolling does not apply to statutes of repose, resolution of the standing issue would become unnecessary, at least with respect to Plaintiff's federal claims (and perhaps its Kansas claim) because all of the federal securities claims would still be barred by 15 U.S.C. § 77m. As the Court noted in the *RBS* Matter, some courts have concluded that *American Pipe* tolling does *not* apply to statutes of repose. *See, e.g.*,

---

[7] The need to address Residential's "no-resurrection" argument with regard to *American Pipe* would appear to be contingent upon the Court resolving the standing question. If standing is unnecessary, then it would seem that Residential's argument would be pointless (although if the Court is incorrect in that regard, Residential can explain why).

10

*In re Lehman Bros. Secs. & ERISA Litig.*, 800 F.Supp.2d 477, 481-82 (S.D.N.Y. 2011); *In re IndyMac Mortg.-Backed Secs. Litig.*, 793 F.Supp.2d 637, 642 (S.D.N.Y. 2011); *see also Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524 (9th Cir. 2011) (certifying question regarding interaction between *American Pipe* tolling and *state* statute of repose to Arizona Supreme Court), *answered by* 254 P.3d 360 (Ariz. 2011) (concluding that filing of motion for class certification did not toll statute of repose for individual class members), *answer conformed in* 662 F.3d 1120, 1122 (9th Cir. 2011).

On the other hand, at least one federal Circuit Court has specifically applied *American Pipe* tolling to the three-year repose period present in Section 11 of the Securities Act of 1933. *See Joseph v. Wiles*, 223 F.3d 1155 (10th Cir. 2000). That decision rejected the argument that *American Pipe* tolling was a form of *equitable* tolling, which the Supreme Court had earlier decided was a form of tolling that could not apply to statutes of repose. *See id.* at 1166-68; *see also Lampf v. Gilbertson*, 501 U.S. 350, 363 (1991). District courts within this Circuit (including Judge Pfaelzer of this District) have largely, if not entirely, agreed. *See Maine State*, 722 F.Supp.2d at 1166; *Hrdina v. World Savs. Bank, FSB*, No. C 11-05173 WHA, 2012 U.S. Dist. LEXIS 12252, *8-12 (N.D. Cal. Jan. 31, 2012); *Hildes v. Andersen*, No. 08-cv-0008-BEN (RBB), 2010 U.S. Dist. LEXIS 118217, *7 (S.D. Cal. Nov. 8, 2010). *But see Romero v. Countrywide Bank, N.A.*, 740 F.Supp.2d 1129, 1145 (N.D. Cal. 2010) ("[T]he Ninth Circuit has recognized that '§ 1635 is a statute of repose, depriving the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three year limitation period.'") (quoting *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002)).

Here, unlike the question of whether *American Pipe* requires the earlier class representative to have had standing, the district courts within this Circuit appear to be entirely (or at least virtually entirely) in agreement with the only federal appellate court decision on point. This suggests that this Court likely should follow suit and reject the argument that *American Pipe* tolling is prohibited with respect to statutes of repose. As such, any federal[8] securities claims as to which the 3-year statute of repose had not run by

---

[8] The only security underlying Plaintiff's claim under Kansas law does not appear to be subject to Plaintiff's *American Pipe* argument. *See* Complaint ¶376 & Table 7.

11

the time an earlier class action covering those particular securities was filed, would be given *American Pipe* tolling (assuming that the Court determines the standing question in Plaintiff's favor).

### c. Assuming it is Available, Has Plaintiff Properly Pled *American Pipe* Tolling?

Goldman argues that, even if Plaintiff is theoretically capable of taking advantage of *American Pipe* tolling, it has not pled such tolling sufficiently here. In particular, it cites to Judge Pfaelzer's opinion in *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F.Supp.2d 1125 (C.D. Cal. 2011). There, the court required the plaintiff, in amending its complaint, to include information such as "the [tranche] of the security that Plaintiff purchased…the grounds for asserting that [the class representative in the earlier class action] also purchased the security[,] the [tranche] of the security that th[at] [class representative] plaintiff purchased[,] and the date on which that [class representative] plaintiff joined the [class] case." *Id.* at 1131; *see also Maine State*, 722 F.Supp.2d at 1167-68 (requiring *American Pipe* pleading in some detail because of the "complicated history" of preceding class action and because court had before it "numerous parties and numerous securities"). Plaintiff does not appear to have responded to this aspect of the Defendants' arguments.

If the particular securities were *never* at issue in the earlier class actions cited for purposes of *American Pipe* tolling, that is a different question than whether the particular class representatives attempting to sue based in connection with particular securities actually had standing to do so. Whatever decision the Court makes about the latter situation, the former obviously would not give rise to *American Pipe* tolling. For at least that reason, the requirements imposed in *Stichting* and *Maine State* make good sense here. The Court would agree with Goldman that Plaintiff has not satisfied that standard. Amendment in that regard would therefore be required.

### 3. Does Plaintiff's Agreement With Goldman Extend the Kansas Statute of Repose?

Goldman takes the position that statutes of repose cannot be extended by way of private agreement. Plaintiff simply does not respond to this contention. Resolution of this issue is seemingly only necessary with respect to those securities that would be

12

barred by the applicable statutes of repose assuming *American Pipe* tolling does not apply and might be saved by the August 2010 agreement: in other words, only Plaintiff's Kansas claim, as the three-year statute of repose applicable to Plaintiff's federal claims would have expired by the time Plaintiff reached agreement with Goldman.

Although Plaintiff has not responded to Goldman's argument, it would appear that this issue would need to be decided by way of reference to Kansas law. *Cf. Albano*, 634 F.3d 524. Goldman has not directed the Court to any such law. As such, the Court will not resolve this issue at this time.

### D. Plaintiff Has Not Failed to Sufficiently Allege Materiality

Although the arguments against materiality here are slightly different than what were advanced in the *RBS* Matter – Goldman argues that given what the market, WesCorp and U.S. Central were (or could have been) already aware of, the disclosures Plaintiff asserts were required would not have added to the "total mix" of information that a reasonable investor would have determined was important – as in that case, *see* 11-5887, Docket No. 108, at 11, the Court would not resolve the question of materiality as a matter of law here or even conclude that Plaintiff has not yet pled it sufficiently. For one thing, Plaintiff's theory here, as in the *RBS* Matter, is that underwriting guidelines were essentially abandoned, a fact that any investor (along with ratings agencies and other interested parties) would have found incredibly important in making their investment decisions. *See, e.g., Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 773 & n.11 (1st Cir. 2011); *see also* Complaint ¶¶ 39, 52, 101, 104, 272, 283, 290, 298.

### E. Has Plaintiff Otherwise Sufficiently Stated Its Claims?

Section 11 of the Securities Act provides a private right of action for securities purchasers if an issuer publishes a registration statement in connection with that security that contains an untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading. *See Sparling v. Daou (In re Daou Sys., Inc., Secs. Litig.)*, 411 F.3d 1006, 1028-29 (9th Cir. 2005) (quoting 15 U.S.C. § 77k). "To prevail in such an action, a plaintiff must prove '(1) that the registration statement contained an omission or misrepresentation, and

13

(2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *Id.* at 1027. Section 12(a)(2) of the Securities Act provides for liability "for use of any instrumentality of interstate commerce to offer or sell securities by means of a prospectus or oral communication that includes 'an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading....'" *Id.* at 1028-29; 15 U.S.C. § 77*l*(a)(2). California Corporations Code section 25401 imposes liability upon those whom, in offering to sell or selling or in offering to buy or buying a security in California, do so by means of any written or oral communication including an untrue statement of a material fact or omission of a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading. *See* Cal. Corp. Code § 25401; *see also Stewart v. Ragland*, 934 F.2d 1033, 1047 (9th Cir. 1991).[9] Kansas's law, in pertinent part, renders a person liable for selling a security "by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make a statement made, in light of the circumstances under which it is made, not misleading, the purchaser not knowing the untruth or omission." Kan. Stat. Ann. § 17-12a509(b).

The Court will not repeat in detail its view, as set forth in the *RBS* Matter, on the application of the Supreme Court's decisions in *Twombly* and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), in connection with the types of allegations raised in this category of cases. *See* No. 11-5887, Docket No. 108, at 3-11; *id.*, Docket No., 126, at 5-6. Suffice it to say that where a plaintiff sets forth only post-purchase performance statistics, allegations targeting an industry in general (without ties to specific originators involved here) or little more than that, the Court is of the view that this is insufficient to plausibly state a claim or theory based upon the alleged wholesale abandonment of underwriting guidelines. *But see* Complaint ¶¶ 55-56 & Table 5 (alleging that common pattern of increasing defaults and delinquencies, actual losses far outpacing expected losses, and a high originate-to-

---

[9] Section 25501 of the Corporations Code simply provides the available relief and for certain defenses in connection with a section 25401 violation. *See* Cal. Corp. Code § 25501.

distribute rate demonstrates systematic disregard of underwriting guidelines). Where there is something more than just that, however, the case for surviving the pleadings under *Twombly/Iqbal* is stronger. The Court need not attempt the difficult task of defining precisely where that dividing line is located.[10]

Here, Plaintiff has presented the Court with "something more" than just statistics with respect to almost all of the relevant originators covering almost all of the claims at issue in this action.[11] *See, e.g.*, Complaint ¶¶ 111-14 (American Home), 119-22, 125, 131-33, 136, 138-40 (Countrywide), 143, 145-51 (First Franklin), 154-57 (Fremont), 161, 163 (Greenpoint), 172-74, 176, 179-85, 187-88, 190 (IndyMac), 195, 200, 203, 205, 208, 211, 213-18 (WaMu/Long Beach). *Bolstered* by those statistics,[12] the allegations suggestive of a systematic disregard or wholesale abandonment of underwriting guidelines, or something akin thereto, are sufficient to state claims against almost all of those originators (unless the Court takes the strict view, mentioned in its analysis in the *RBS* Matter, that the allegations must be tied to the particular loans underlying the particular RMBS at issue here, *see* No. 11-5887, Docket No. 108, at 9-10).

The only originator that would appear to fall just on the other side of the plausibility line would be Homecomings Financial Network, Inc. ("Homecomings").[13] As to that originator (whose securities appear to affect only Plaintiff's fifth, sixth and seventh claims for relief), Plaintiff only conclusorily pleads "systematic disregard" (*see* Complaint ¶ 166), that the Federal Trade Commission opened an investigation into its mortgage lending and underwriting practices, which was later closed after Homecomings ceased mortgage loan origination (*see id.* ¶ 167); and that a March 2009 Portland Tribune

---

[10] There appears to still be only a single federal appellate court decision bearing on this issue –*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 773 (1st Cir. 2011).

[11] To be clear, the Court does not consider Plaintiff's assertions regarding the recent, large, civil fine the SEC issued Goldman. If Plaintiff expects the Court to factor that information into its analysis, it will have to add it to its allegations in this case by way of amendment and sufficiently explain why the behavior underlying that fine is connected with anything to do with this case.

[12] As suggested in the RBS Matter, the originate-to-distribute statistic is one of the most persuasive statistics when accompanied by factual allegations reflecting abandonment of underwriting guidelines because of the shift in risk-based incentives. See Complaint ¶¶ 31, 69-70, 102, & Table 6; No. 11-5887, at 10.

[13] The allegations concerning Fremont and Greenpoint are close to the line as well.

article reported that the emphasis in Portland was on "Alt A" loans and "Option ARMs," suggesting that Option ARM terms were hidden from a number of borrowers (*see id.* ¶ 168). Little of what information there is in the Portland Tribune article appears to be particularly directed to Homecomings, and what information there is seems to indicate an emphasis on particular types of subprime loans (that may have been employed in a way so as to defraud borrowers), not that there were simply no underwriting guidelines being applied whatsoever. In sum, the Court would agree with the Defendants that Plaintiff's allegations concerning Homecomings are insufficient. Plaintiff would need to amend in this regard (which would affect, at a minimum, Plaintiff's fifth claim for relief, and perhaps its sixth and seventh claims for relief as well).

Except as to Homecomings, for the reasons addressed in Plaintiff's Opposition Brief, the Court has no difficulty with Plaintiff's pleading of the falsity or omission-based misrepresentation(s) in connection with the various categories (systematic disregard of underwriting guidelines, reduced documentation programs, loan-to-value ratios, credit enhancements) it has covered.

### F. Conclusion

Assuming the Court reaches the conclusion that the Extender Statute and *American Pipe* apply to the claims raised herein, the Court would deny any attempt to dismiss Plaintiff's claims on statute of limitations grounds. If any federal claims barred by the applicable statute of repose do not enjoy *American Pipe* tolling, those claims would be dismissed without leave to amend. Assuming the Court concludes *American Pipe* applies, the Court would still order Plaintiff to amend its *American Pipe*-related allegations. Finally, the Court would dismiss those claims reliant on origination activity of Homecomings, with leave to amend. Otherwise, the motions would be denied.