## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidating Agent of U.S. Central Federal Credit Union, Western Corporate Federal Credit Union, Members United Corporate Federal Credit Union, and Southwest Corporate Federal Credit Union,<br><br>        Plaintiff,<br><br>v.<br><br>J.P. MORGAN SECURITIES LLC., J.P. MORGAN ACCEPTANCE CORPORATION I, AMERICAN HOME MORTGAGE ASSETS LLC, INDYMAC MBS, INC., and BOND SECURITIZATION, LLC,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)  Case No. 11-cv-2341 EFM/JPO<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFF NCUA'S OPPOSITION TO MOTION FOR A STAY

Plaintiff National Credit Union Administration Board ("NCUA") respectfully opposes Defendants'[1] motion to stay this case pending the interlocutory appeal in *National Credit Union Administration Board v. RBS Securities, Inc.*, Civ. Nos. 11-2340-RDR & 11-2649-RDR, 2012 WL 3028803 (D. Kan. July 25, 2012) ("*RBS*"). That request is unwarranted, which may explain why no defendant has sought to stay any of the five other cases NCUA has filed in this District — including the *RBS* case itself.

JP Morgan has failed to meet its burden to justify a wholesale stay of this litigation. "[T]he right to proceed in court should not be denied except under the most extreme circumstances," and this principle applies fully "even when the relief sought is only a stay of the case in which [a] motion is made." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th

---

[1] These are J.P. Morgan Securities LLC, J.P. Morgan Acceptance Corporation I, and Bond Securitization, LLC (collectively, "JP Morgan" or "Defendants").

Cir. 1983) (internal quotation marks omitted).  There are no extreme circumstances here.  Instead, JP Morgan bases its request *entirely* upon the grant of an interlocutory appeal in the *RBS* case.  But even if the appellants in that case were to prevail completely, virtually all of the state securities claims against JP Morgan (and most of the federal securities claims) would proceed anyway.  In other words, the bulk of this case is outside the scope of the *RBS* appeal, and regardless of the outcome of that appeal, this Court will be required to move forward on most of the claims in the complaint.

Defendants therefore seek delay for the sake of delay, not for any actual benefit to the parties or this Court.  They also fail to note, let alone distinguish, rulings by both the district court *and* the Second Circuit denying motions for a stay pending interlocutory review of legal issues similar to those before the Tenth Circuit in the *RBS* case.  *See* Order, *Federal Hous. Fin. Agency v. UBS Americas, Inc.*, No. 1:11-cv-05201 (S.D.N.Y. Sept. 4, 2012) (ECF No. 186) (Ex. A);[2] Order, *Federal Hous. Fin. Agency v. UBS Americas, Inc.*, No. 12-3207 (2d Cir. Oct. 1, 2012) (ECF No. 126) (Ex. B).  Because JP Morgan is actively engaged in discovery in those *FHFA* cases involving similar RMBS claims, *e.g.*, Order, *Federal Hous. Fin. Agency v. UBS Americas, Inc.*, No. 1:11-cv-05201 (S.D.N.Y. Nov. 26, 2012) (ECF No. 277) (Ex. C), it is implausible for them to maintain that a stay is appropriate even before discovery has begun here, or that the incremental burden of providing similar discovery in this case would be an extreme hardship.

## BACKGROUND

NCUA is an independent federal agency responsible for chartering and regulating federal credit unions, regulating federally insured state credit unions, and administering the National Credit Union Share Insurance Fund (the "Fund").  *See* 12 U.S.C. §§ 1752a(a), 1754, 1781, 1783–1784.  When an insured credit union is in danger of failing, NCUA has the responsibility to step in as

---

[2] Exhibits referenced herein refer to exhibits attached to the Declaration of Wan J. Kim, filed herewith.

conservator — and if necessary, liquidating agent — in order to minimize losses to the Fund.  *See* 12 U.S.C. §§ 1766, 1786(h), 1787.

From 2006 to 2007, Defendants issued and underwrote securities (the "Certificates") backed by residential mortgages.  In the Offering Documents for these Certificates, Defendants represented that the mortgages backing the Certificates had been originated in compliance with stated underwriting guidelines — that is, the loans were sound because they had been properly underwritten.  NCUA has alleged in this case that those representations were untrue.  The mortgages were actually originated without regard for the underwriting guidelines.

On June 20, 2011, NCUA filed this action in its capacity as liquidating agent of four failed credit unions that had purchased the Certificates.  The Complaint asserted claims under §§ 11 and 12(a)(2) of the Securities Act of 1933, as well as similar state "blue sky" securities statutes.  On October 27, 2011, Defendants moved to dismiss the complaint.  That motion is pending the Court's consideration.

NCUA has filed several similar actions against other Wall Street banks in this District.  The parties are briefing motions to dismiss in many of these cases.  In the *RBS* case, Judge Rogers largely denied defendants' motions to dismiss on July 25, 2012.  *See RBS*, 2012 WL 3028803, at *13–*18. Thereafter, Judge Rogers certified, and the Tenth Circuit accepted, two issues for interlocutory appeal:  "[1] whether the extender statute [12 U.S.C. § 1787(b)(14)(B)(i)] described in the court's order dated July 25, 2012 applies to the three-year time limitation (statute of repose) contained in § 77m and [2] whether the extender statute applies to federal and state statutory claims."  *RBS*, 2012 WL 4210500, at *4 (D. Kan. Sept. 19, 2012).

JP Morgan now moves for a stay of this case pending the Tenth Circuit's review of the *RBS* interlocutory appeal.  No defendant in any other NCUA case has made a similar motion.

## ARGUMENT

JP Morgan's request for a stay is based entirely upon the grant of interlocutory appeal in *another* case. Congress has provided, however, that an interloctory appeal does not typically stay the district court proceedings even in the case in which it has been granted. Rather, under 28 U.S.C. § 1292(b), those proceedings presumptively continue unless the district court or the court of appeals orders otherwise. No party in the *RBS* case has requested a stay under § 1292(b); to the contrary, NCUA has filed an amended complaint in the *RBS* case, and the parties are actively briefing the defendants' second round of motions to dismiss, while simultaneously litigating the interlocutory appeal in the Tenth Circuit.

Because JP Morgan has no basis for seeking a stay under § 1292(b), it invokes the general authority of this Court to order one. Such motions are disfavored. The party moving for a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936); *see Chilcott Portfolio Mgmt.*, 713 F.2d at 1484 ("[W]here a movant seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others."); *see also Wolf v. United States*, 157 F.R.D. 494, 495 (D. Kan. 1994) (noting the "general policy in this district [] not to stay discovery even though dispositive motions are pending").

Courts in this District have considered five factors in assessing a motion to stay: "(1) plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Klaver Constr. Co. v. Kansas Dep't of Transp.*, No. 99-2510-KHV, 2001 WL 1000679, at *3 (D. Kan. Aug. 23, 2001); *see also FDIC v. Renda*, No. 85-2216-O, 1987 WL 348635, at *2 (D. Kan. Aug. 6, 1987). All five factors

weigh against JP Morgan's request here.  Defendants therefore cannot shoulder their burden to "make out a clear case of hardship or inequity in being required to go forward" absent a stay. *Landis*, 299 U.S. at 255.

## I.     A STAY WILL PREJUDICE NCUA

A stay will threaten NCUA's "right to pursue [its] case and to vindicate [its] claim expeditiously." *Renda*, 1987 WL 348635, at *2 (internal quotation marks omitted).  JP Morgan proposes to stay this case indefinitely until the Tenth Circuit issues a ruling in the *RBS* appeal.  That could extend to the Fall of 2013 or beyond.  While JP Morgan claims (at 6) that NCUA "will not be prejudiced by a short delay," a year or more of delay is hardly "short" and undoubtedly prevents NCUA from vindicating its claims "expeditiously."

Such an extensive delay will likely result in prejudice.  To consider just one example, NCUA must obtain critical materials (including the loan files and underwriting guidelines) from third parties, such as the originators who made the loans that form the RMBS at issue in this case.  Delaying discovery puts such evidence at risk of loss, destruction, or deterioration.  Several relevant originators have already become defunct, making the process of getting the loan files and origination guidelines increasingly difficult — and that process will only get worse as the underlying events become more distant.  *See*, *e.g.*, *Miller v. Basic Research, LLC*, No. 2:07–CV–871 TS, 2011 WL 818150, at *5 (D. Utah Mar. 2, 2011) (denying a stay of discovery in part because of the "risk that evidence will be lost and witnesses' memories will fade or they may become unavailable").

## II.     PROCEEDING WILL NOT UNDULY BURDEN DEFENDANTS

Defendants say nothing about how proceeding with the ordinary course of litigation would present any unusual hardship here.  *See* Mot. at 6 (claiming, without elaboration, that a stay "could prevent unnecessary costs").  Just the opposite is true, for at least three reasons.

*First*, nothing that happens in the *RBS* appeal could affect the vast majority of the claims in the complaint. Defendants admit (at 3) that, even in their best case scenario, most of this case will survive any ruling by the Tenth Circuit: an across-the-board reversal of Judge Rogers in *RBS* would "require the dismissal of federal claims relating to 11 of the 34 RMBS certificates at issue and two of the five defendants in this case." In other words, federal claims for 23 of 34 Certificates would survive regardless.[3] Even that metric understates the matter. The interlocutory appeal also would not affect state claims relating to 29 of the 34 Certificates in Table 1 of the Complaint, which were indisputably filed within the five-year limitations periods set forth in the relevant state securities laws.[4] Nor would any ruling by the Tenth Circuit materially affect the scope of discovery for the bulk of federal and state claims that would survive regardless, as the standards for the state and federal securities claims are similar in most respects.[5]

---

[3] For this reason, JP Morgan misplaces reliance on two cases where, unlike here, the appeal that justified a stay could resolve all of the claims. *See Beltronics USA, Inc. v. Midwest Inventory Distribution LLC*, 545 F. Supp. 2d 1188, 1189 (D. Kan. 2008) ("[D]efendants' appeal of the court's ruling on the first sale doctrine issue is unique in the sense that it has the potential to dispose of plaintiff's *entire* case without the need for discovery or a trial.") (emphasis added); *Brin v. State*, No. 97-9243-SAC, 2000 WL 1542830, at *3 (D. Kan. Sept. 19, 2000) (staying the case pending Supreme Court decision "[i]n light of the strong possibility that . . . *Garrett* will resolve *all* of plaintiff's remaining ADA claims") (emphasis added).

[4] The Tenth Circuit's consideration of whether the extender statute applies to state statutory claims also would not be dispositive. Even if the Court ruled that it did not do so, a reasonable investor could not have discovered Defendants' material misstatement and omissions in the time otherwise permitted under the applicable Kansas, California, Illinois, and Texas blue sky laws. *See* NCUA Opp. to Mot. to Dismiss at 32 (ECF No. 39). Finally, a Tenth Circuit reversal would not require dismissal of three of the four defendants that have entered an appearance in this litigation.

[5] *See, e.g.*, *In re Gap Stores Sec. Litig.*, 79 F.R.D. 283, 307 (N.D. Cal. 1978) ("All that has been said above about § 12(2) applies with equal force to the pendent state claims since they are based on California statutes specifically modeled after § 12(2)."); NCUA Opp. to Mot. to Dismiss at 11–12 & n.18 (explaining the similarities of the federal and state claims).

*Second,* there is no scheduling order in this litigation and no discovery has been served.  A stay at this time would only unnecessarily delay a ruling on the pending motion to dismiss. Obtaining that ruling causes no injury to Defendants.

*Third*, even when discovery begins in this litigation, JP Morgan will not be harmed by providing it.  JP Morgan is already producing discovery in a number of other RMBS cases (including the FHFA cases in the Southern District of New York, where Judge Cote denied JP Morgan's motion for stay).  Providing the same or similar discovery in this case is not an undue burden.

Tellingly, Defendants fail to identify how they would benefit from a stay.  They simply note (at 6) that Judge Rogers indicated that an interlocutory appeal might "materially advance the ultimate termination" of that litigation.  *RBS*, 2012 WL 4210500, at *2.  But Judge Rogers did not make any finding about the effect of the appeal on *this* case, nor did he enter a stay in the *RBS* case – which, as we have noted, § 1292(b) contemplates will not usually happen in an interlocutory appeal.  *See supra* p. 4.

## III.    A STAY WILL NOT BENEFIT THE COURT

This is a case where "[i]t is far more likely that a stay would only postpone the court's work, thereby frustrating the court's strong interest in moving its docket."  *Renda*, 1987 WL 348635, at *5. As explained above, a Tenth Circuit reversal in *RBS* at most would require the dismissal of federal claims relating to 11 of 34 Certificates in this case.  Regardless of that outcome, this Court will need to resolve state claims relating to 29 of 34 Certificates, as well as federal claims as to 23 of 34 Certificates that are subject to *American Pipe* tolling.  Under these circumstances, there is nothing to be gained, and much to be lost, from "postpon[ing] the court's work" and "frustrating" the court's ability to move its docket.  *Id.*  For example, JP Morgan recently announced a settlement with the U.S. Securities and Exchange Commission for nearly $300 million related to its sale of defective RMBS to investors.  *See* Press Release, SEC, SEC Charges J.P. Morgan and Credit Suisse with

Misleading Investors in RMBS Offerings (Nov. 16, 2012), *available at* http://www.sec.gov/news/press/2012/2012-233.htm.  There would be no incentive for JP Morgan to resolve this case during the pendency of a stay.

## IV.   A STAY WILL INCONVENIENCE NON-PARTIES

As with other factors, JP Morgan fails seriously to address how a stay will benefit non-parties, implicitly conceding that this factor weighs against a stay.  Defendants make a conclusory claim (at 7) that a stay will benefit individuals with "information and documentation potentially relevant to" NCUA's claims, but do not explain why that would be so.  In fact, third parties have every interest in resolving these issues quickly — especially because many are currently being presented with similar discovery requests in a number of similar RMBS actions, such as the *FHFA* cases.  There is no benefit to third parties from having their discovery obligations extended by months or years because of JP Morgan's request for a stay in this case.

## V.   A STAY IS CONTRARY TO THE PUBLIC INTEREST

Defendants insist (at 7) that a temporary stay would "also serve [the] public interest because 'conserving judicial resources' is a 'vital public interest.'" (citation omitted).  This ignores the "court's strong interest in moving its docket," *Renda, supra*, as well as the equally strong interest in permitting NCUA — a governmental entity performing its statutory duty as liquidating agent — promptly to vindicate its claims.  *See Federal Hous. Fin. Agency v. Royal Bank of Scotland*, No. 3:11-cv-01383, at 5 (D. Conn. Aug. 17, 2012) (ECF No. 61) (Ex. D) (granting motion to commence discovery in part because "FHFA is bringing this action pursuant to its Congressional authorization under HERA to pursue claims as conservator for Fannie Mae and Freddie Mac"); *see also* 12 U.S.C. § 1787(b)(2)(B)(ii) (directing NCUA to collect obligations owed to failed credit unions).  A stay would merely hamper NCUA's efforts to fulfill its public duties in a timely fashion.

* * * * *

For the reasons given above, the balance of interests weighs against a stay.  This Court should follow the rulings by Judge Cote and by the Second Circuit that denied defendants' motions for a stay pending the Second Circuit's interlocutory review of similar legal issues.  *See supra* p. 2. Indeed, the rationale behind those rulings applies with even greater force here because, as compared to *FHFA*, a much greater number of claims in this case will be unaffected by the ruling on interlocutory review.  In *FHFA v. J.P. Morgan*, for example, only 14 of 30 certificates are subject to *American Pipe* tolling, while that doctrine applies to preserve federal claims for 23 of 34 certificates in this case.  FHFA's case against JP Morgan also has few independently sufficient state law securities claims, while here, the Complaint brings California and Kansas state law claims that would preserve NCUA's right to recover as to 29 of the 34 Certificates in the Complaint even if NCUA's federal claims were untimely.[6]

## CONCLUSION

Defendants fail to meet their burden of showing "extreme circumstances" to justify a stay. Their motion should be denied.

---

[6] In particular, the California and Kansas blue sky claims in this case provide two- and five-year limitations periods, which exceed the one- and three-year limitations periods applicable to the federal securities claims.  In contrast, the FHFA's complaints generally alleged District of Columbia and Virginia blue sky claims that did not provide longer limitations periods than its federal claims.

Dated: November 30, 2012                  Respectfully submitted,

                                          STUEVE SIEGEL HANSON LLP

                                          /s/ Rachel E. Schwartz
                                          Norman E. Siegel (D. Kan. # 70354)
                                          Rachel E. Schwartz (Kan. # 21782)
                                          460 Nichols Road, Suite 200
                                          Kansas City, MO 64112
                                          Tel: (816) 714-7100
                                          Fax: (816) 714-7101
                                          siegel@stuevesiegel.com
                                          schwartz@stuevesiegel.com

                                          George A. Zelcs, *pro hac vice*
                                          KOREIN TILLERY, LLC
                                          205 North Michigan Avenue, Suite 1950
                                          Chicago, Illinois 60601
                                          Phone: (312) 641-9760
                                          Fax: (312) 641-9751
                                          GZelcs@koreintillery.com

                                          Mark C. Hansen, *pro hac vice*
                                          David C. Frederick, *pro hac vice*
                                          Wan J. Kim, *pro hac vice*
                                          Joseph S. Hall, *pro hac vice*
                                          Scott K. Attaway, *pro hac vice*
                                          KELLOGG, HUBER, HANSEN, TODD,
                                              EVANS & FIGEL, P.L.L.C.
                                          Sumner Square
                                          1615 M Street, N.W., Suite 400
                                          Washington, D.C. 20036
                                          Phone: (202) 326-7900
                                          Fax: (202) 326-7999
                                          mhansen@khhte.com
                                          dfrederick@khhte.com
                                          wkim@khhte.com
                                          jhall@khhte.com
                                          sattawy@khhte.com

                                          *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/Rachel E. Schwartz
*Attorney for Plaintiff*