## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

```
---------------------------------------------------------------------  x
NATIONAL CREDIT UNION ADMINISTRATION                :
BOARD, as Liquidating Agent of U.S. Central Federal :
Credit Union, Western Corporate Federal Union, Members :
United Corporate Federal Credit Union, and Southwest :
Corporate Federal Credit Union,                     :
                                                    :  CIVIL ACTION
               Plaintiff,                           :  CASE NO. 11-cv-2341 JWL/JPO
                                                    :
       v.                                           :
                                                    :
J.P. MORGAN SECURITIES LLC, J.P. MORGAN             :
ACCEPTANCE CORPORATION I, AMERICAN HOME             :
MORTGAGE ASSETS LLC, INDYMAC MBS, INC., and         :
BOND SECURITIZATION, LLC,                           :
                                                    :
                                                    :
               Defendants.                          :
---------------------------------------------------------------------  x
```

## J.P. MORGAN DEFENDANTS' RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

The J.P. Morgan Defendants[1] hereby respond to the Notice (ECF No. 69) filed by

the Board informing the Court of New Jersey Carpenters Health Fund v. Royal Bank of Scotland

Group, PLC, No. 12-1707-cv, 2013 WL 765178 (2d Cir. Mar. 1, 2013) ("N.J. Carpenters"),

reversing, in relevant part, the decision in N.J. Carpenters Health Fund v. NovaStar Mortg., Inc.,

No. 1:08-cv-5310, 2012 WL 1076143 (S.D.N.Y. Mar. 29, 2012) ("NovaStar II"), which the J.P.

Morgan Defendants brought to the Court's attention in their April 4, 2012, Notice of

Supplemental Authority (ECF No. 49).  The Board's submission argues that the N.J. Carpenters

---

[1] Defined terms have the same meaning as in the J.P. Morgan Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss the Complaint ("Reply Brief").

decision undermines the J.P. Morgan Defendants' motion to dismiss with respect to: (1) "narrative allegations"; (2) "performance statistics"; and (3) "materiality". (Notice at 2.) The Board is wrong.

        <u>First</u>, <u>N.J. Carpenters</u> actually confirms that the Board's claims are deficient. The Board suggests that this decision permits a plaintiff to state a claim by relying on any type of "narrative allegations". But the <u>N.J. Carpenters</u> court made clear that the "narrative allegations" must be linked to the securities and loans at issue. The plaintiff in <u>N.J. Carpenters</u> alleged that the <u>only</u> significant originator of loans underlying the <u>single</u> RMBS offering at issue in that case did not follow the underwriting practices disclosed in the relevant prospectus. 2013 WL 765178, at *5-6. The plaintiff alleged that it conducted interviews of numerous unnamed former employees of that single originator and included in the complaint statements of at least eight employees regarding the lack of compliance with underwriting standards during the time period relevant to the single offering at issue. <u>Id.</u> at *5. Thus, in light of these allegations, the Second Circuit determined that the "substantial sources" detailed by the complaint "gave a 'fairly specific' account of a 'key' underwriter's practices and <u>alleged facts that tied the purported practices to the specific securities at issue</u>". <u>Id.</u> at *10 n.7 (emphasis added).

        The facts here are far different. In stark contrast to the complaint at issue in <u>N.J. Carpenters</u>, the Board's claims relate to 16 offerings backed by tens of thousands of loans that were originated by a multitude of originators. However, despite this complex factual background, the Board does not allege that it conducted <u>any</u> interviews of employees of any originator, let alone interviews of numerous employees who were employed at each originator during the period in which it originated most of the loans at issue. Rather, the Board points only

to generalized allegations regarding some (but not all)[2] of the originators of the loans underlying the Certificates at issue to support its claims. (See Reply Br. at 5-6; Compl. ¶¶ 92-235.) Accordingly, unlike in N.J. Carpenters, the Board fails to "tie[] the purported practices to the specific securities at issue". N.J. Carpenters, 2013 WL 765178, at *10 n.7. That failure is fatal to the Board's claims. See Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) ("the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims"); NCUAB v. RBS Sec., Inc., No. 11-cv-05887, ECF No. 108, slip op. at 4-5 (C.D. Cal. Dec. 19, 2011) (Paskin Decl. Ex. 1) (tentative ruling) ("RBS I") ("to the extent that the [originator-specific] anecdotes are not connected to the actual loans at issue here, there is a strong argument that such facts have no effect on the plausibility of the claims").

        Second, to the extent the Board suggests that N.J. Carpenters somehow stands for the proposition that a plaintiff may solely rely on post-securitization loan performance statistics to support a claim of systematic disregard of underwriting guidelines, the Board is wrong. The N.J. Carpenters court did not hold that such statistics alone are sufficient to support a plausible claim of systematic abandonment of underwriting guidelines. Rather, the court held that such statistics plausibly stated a claim when pleaded in conjunction with sufficiently specific allegations—which the Board fails to plead here. See N.J. Carpenters, 2013 WL 765178, at *5, *10. In any event, as expressed for example by the court in RBS I, loan performance statistics, like those upon which the Board so heavily relies, are "an example of the conclusory pleading

---

[2] The Complaint does not include any allegations relating to the underwriting performed by at least three originators: ResMAE, Accredited Home Lenders and WMC. Accordingly, the Board's "narrative allegations" cannot support any claims related to the following trusts: JPMAC 2006-HE1 (because it is backed by loans originated solely by ResMAE and Accredited Home Lenders) and JPMAC 2006-WMC3 (because it is backed by loans originated solely by WMC). See Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I, No. 08-cv-01713, 2011 WL 6182121, at *12 (E.D.N.Y. Dec. 13, 2011); Reply Br. at 5-6.

tactic <u>Twombly</u> itself expressly rejected—locating an effect and presuming the [self-serving] cause, without the underlying factual allegations necessary to render that cause any more than a <u>possible</u> one, or one that is simply 'consistent with' liability". <u>RBS I</u> at 4-5.

   <u>Third</u>, the Second Circuit's holding that the risk disclosures in <u>N.J. Carpenters</u> did not render plaintiff's claims immaterial, <u>N.J. Carpenters</u>, 2013 WL 765178, at *13, does not undermine the J.P. Morgan Defendants' argument that an alleged misrepresentation must be considered in the context of the "total mix of information" available to the Credit Unions.  (<u>See</u> JPM Br. at 28-30; Reply Br. at 10-11.).  When the Board's allegations are read in this context—including the extensive disclosures in the Offering Documents on the same topics as to which the Board alleges the Offering Documents were misleading, nationwide press coverage of underwriting practices, warnings from the Board itself, and the Credit Union's own experience with money-losing Certificates—the Board cannot state a claim for a material misstatement of fact.  <u>See</u> <u>City of Phila. v. Fleming Cos., Inc.</u>, 264 F.3d 1245, 1265 (10th Cir. 2001) (a statement is only material if a "reasonable investor" would have viewed the alleged misrepresentations or omissions as "<u>significantly</u> alter[ing] the total mix of information") (emphasis added).

Dated:  March 18, 2013                    Respectfully submitted,


                                          /s/  Thomas P. Schult
                                          John W. Shaw (KS # 70091)
                                          Thomas P. Schult (KS # 70463)
                                          Jennifer B. Wieland (KS # 22444)
                                          BERKOWITZ OLIVER WILLIAMS
                                          SHAW & EISENBRANDT LLP
                                          2600 Grand Boulevard, Suite 1200
                                          Kansas City, MO 64108

                                          Of Counsel

                                          Daniel Slifkin (NY # 2439768)
                                          dslifkin@cravath.com
                                          Michael A. Paskin (NY # 2767507)
                                          mpaskin@cravath.com
                                          CRAVATH, SWAINE & MOORE LLP
                                          825 Eighth Avenue
                                          New York, New York 10019
                                          (212) 474-1000 (tel.)
                                          (212) 474-3200 (fax)

                                          Counsel for Defendants J.P. Morgan
                                          Securities LLC, J.P. Morgan Acceptance
                                          Corporation I and Bond Securitization, LLC

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on the 18th day of March 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

     /s/ Thomas P. Schult
Counsel for Defendants J.P. Morgan
Securities LLC, J.P. Morgan Acceptance
Corporation I and Bond Securitization, LLC
